# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| MIGUEL CARRILLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 1612 |
| | ) | |
| MICHAEL ASTRUE, | ) | Magistrate Judge Sidney I. Schenkier |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

In this Social Security appeal, Miguel Carrillo seeks reversal and/or remand of the Commissioner of Social Security's denial of his claim for Disability Insurance Benefits ("DIB") for an alleged disability during the closed period of November 13, 2000, through July 21, 2004. Both plaintiff (doc. # 19) and defendant (doc. # 23) have moved for summary judgment. For the reasons that follow, the Court grants plaintiff's motion to reverse the decision denying him benefits, and denies the Commissioner's cross-motion to uphold the decision. The Court remands the case for further proceedings consistent with this opinion.

### I.

Plaintiff was born on July 2, 1972 (R. 137). He has never been married, and he has no children (*Id.*). Plaintiff holds a high school equivalency diploma and received an automotive certificate from Elgin Community College (R. 592).

Prior to 1994, plaintiff worked at times as a gas station attendant and as an emissions tester (R. 594-95). Plaintiff then worked as an auto mechanic for Saturn of Dundee from May 1994 until

---

[1] On April 17, 2008, by consent of the parties and pursuant to 28 U.S.C. § 636(c), the case was assigned to this Court for all proceedings, including entry of final judgment (doc. ## 7, 12).

approximately July 2000, after which he worked for Lynch Automotive from August 2000 until November 13, 2000 (R. 233-34, 593-94, 597). His work as a mechanic required him to occasionally lift up to 100 pounds, stand for most of the day, and constantly bend and squat (R. 593-94).

On October 3, 2000, plaintiff was in an automobile accident (R. 337). He sought medical attention at an emergency room the next week, complaining of shoulder, neck, and back pain (Id.). At that time, plaintiff was diagnosed with acute thoracic strain, given Skelaxin, and prescribed Vioxx (Id.). On November 15, 2000, Dr. Arsenio Atadero diagnosed plaintiff as suffering from chronic headaches and lower back pain that radiated into his mid calves, which increased with standing (R. 427). On December 5, 2000, plaintiff was given an MRI of his lumbar which found a paracentral disc herniation at L5-S1, as well as disc degeneration and lateral disc protrusion at L4-L5 (R. 332). On December 20, 2000, Dr. Munral Panchal diagnosed plaintiff with herniated discs at L4, L5, and L5-S1; L5-S1 radiculopathy (which is pain, tingling, numbness or weakness in limbs, often caused by a herniated disc or degeneration in the lumbar spine); and cervical strain (R. 346). On January 31, 2001, an electromyograph revealed chronic L5 and L5-S1 radiculopathy (R. 341).

On February 21, 2001, Dr. Joanna Barclay opined that plaintiff's back pain was due to herniated discs at L4-S5 and L5-S1, and on Dr. Barclay's advice, plaintiff underwent an epidural steroid injection on March 16, 2001 (R. 358-60). A subsequent diagnosis by Dr. Ajay Mehta on September 28, 2001, confirmed Dr. Barclay's observations, and Dr. Mehta opined that there was no significant change from the December 5, 2000 MRI (R. 417).

Plaintiff stopped working for Lynch Automotive on November 13, 2000, on the grounds that he was no longer able to work because the injuries resulting from the October 2000 car accident made it painful for him to stand, lift, or bend (Id.). Plaintiff was next employed as a sales manager

2

for Murray's Discount Auto from October 2002 through March 2003 (R. 598). In that job, plaintiff primarily walked the floor and assisted customers (*Id.*). His job at Murray's ended when he started having back pain again (R. 599). Plaintiff did not work again until late 2004, after the closed period of disability ended (R. 627).

The Illinois Department of Disability Determination Services (the "State Agency") performed two assessments of plaintiff's physical residual functional capacity ("RFC"). On April 24, 2001, they found that plaintiff suffered from herniated discs in the LS spine, as well as lumbosacral and cervical strain (R. 348). At that time, the medical examiner opined that by twelve months after the onset of plaintiff's impairment, plaintiff would regain the ability to perform light work that does not involve operating foot controls and more than occasional climbing or stooping (R. 355). On March 27, 2002, the State Agency performed a second assessment which found that plaintiff suffered from low back pain but was capable of performing light work, including lifting twenty pounds occasionally, ten pounds frequently, and sitting, standing or walking about six hours in an eight-hour workday (R. 430-31).

## II.

Dr. John Andreshak began treating plaintiff in 2003. On May 19, 2003, he found plaintiff had degenerated discs at L4-5 and L5-S1, and he recommended a series of epidural steroid injections (R. 453). On August 29, 2003, Dr. Andreshak noted that plaintiff continued to have pain on bending forward, twisting, and standing for prolonged periods of time (R. 443). Dr. Beth Froese performed a series of epidural steroid injections on plaintiff during the summer of 2003 (R. 445-48).

Dr. Andreshak determined that these nonoperative treatment measures failed to help plaintiff, and he recommended surgery. On February 10, 2004, Dr. Andreshak performed right L5-S1

3

microlumbar diskectomy and right far lateral microdiskectomy on plaintiff (R. 487-89). By April

7, 2004, Dr. Andreshak determined that plaintiff's condition was improving, and he recommended

that plaintiff continue physical therapy with progression into a work hardening program (R. 495-96).

Plaintiff embarked on a physical therapy program at AthletiCo beginning on April 27, 2004,

and ending June 18, 2004 (R. 561). The physical therapist, Michael Toman, reported that plaintiff

exerted submaximal physical effort, but that this did not imply plaintiff's intent to perform below

his capacity (*Id.*). On June 23, 2004, although plaintiff did not progress well in the work hardening

program and continued to have pain in his back and legs, Dr. Andreshak recommended that plaintiff

attempt to return to full duty at his job (R. 506). By July 21, 2004, the last day of plaintiff's alleged

disability period, Dr. Andreshak again recommended that plaintiff return to full duty because

plaintiff's pain did not fit any particular pattern, and he had nothing else to offer plaintiff with regard

to his pain (R. 507-08).

### III.

Plaintiff also has received diagnosis and treatment for mental health issues. In 2003,

following a charge against plaintiff for domestic battery against his brother, a court ordered plaintiff

to begin treatment for anger management at the Ecker Center for Mental Health (R. 466). On July

31, 2003, Jean Vanderlinde, LCSW, diagnosed plaintiff as suffering from major depression with

chronic intermittent explosive disorder (R. 468). Plaintiff was given a Global Assessment

Functioning ("GAF") score of 55 to 60 (*Id.*). The GAF score reports the "clinician's judgment of

the individual's overall level of functioning." DIAGNOSTIC AND STATISTICAL MANUAL ("DSM") OF

MENTAL DISORDERS at 32 (4th Ed. 2000). On the GAF scale, a score between 51 and 60 represents

"**moderate symptoms** (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) **OR**

**moderate difficulty in social, occupational or school functioning** (*e.g.*, few friends, conflict with

peers or co-workers). *Id.* at 34 (emphasis in original). In December 2004, Mark Hasselman, LCSW,

diagnosed plaintiff with Axis I major depression with evidence of anxiety, outbursts, and diminished

sleep (R. 581-87). Dr. Hasselman gave plaintiff a GAF score of 60 (R. 587). No State Agency

examiner ever assessed whether this mental health condition affected plaintiff's mental RFC.

## IV.

Plaintiff's application for benefits has an extended history, which we summarize below.

Plaintiff first filed for DIB on February 13, 2001, and then again on January 9, 2002, alleging

disability beginning on November 13, 2000, relating to herniated discs in his lower back (R. 133,

136-39).[2] Plaintiff's claim was denied initially on May 2, 2001 (R. 81), and again on April 3, 2002

(R. 85). Plaintiff requested reconsideration of the denial of his claim on April 23, 2002 (R. 92). The

denial of his claim was upheld on May 13, 2002 (R. 94).

On May 22, 2002, plaintiff requested a hearing on his claims before an administrative law

judge (R. 99). This hearing was held on October 9, 2003, before Administrative Law Judge John

Brundage. In an opinion issued on April 28, 2004 (R. 66), ALJ Brundage considered only plaintiff's

physical limitations, and concluded that plaintiff was not disabled within the meaning of the Social

Security Act (the "Act") because he retained the RFC to perform the full range of light work (R. 70-

71).

---

[2] In both of plaintiff's applications for disability insurance benefits, he listed November 13, 2000, as the date of onset of his disabling condition (R. 133). Throughout the many years of this case, this date at times became confused with the date of plaintiff's automobile accident on October 3, 2000 (*see, e.g.*, R. 123-24, 3/10/06 Order of Appeals Council remanding case to ALJ). The alleged date of onset remains, however, the date that plaintiff stopped work due to his injury, which was November 13, 2000.

On June 7, 2004, plaintiff requested a review of ALJ Brundage's decision (R. 108). He submitted new evidence to the Appeals Council, generated after the hearing before ALJ Brundage, regarding back surgery he underwent in February 2004 and post-operative treatment he received (R. 110-11). The Appeals Council vacated the hearing decision and remanded the case for evaluation of both the new evidence and the evidence of plaintiff's mental impairment (R. 113).

On remand, the case was heard before a different ALJ, John Mondi. On May 24, 2005, ALJ Mondi issued an opinion concluding that plaintiff was not disabled (R. 75). ALJ Mondi found that plaintiff had been engaged in substantial gainful activity after the alleged onset of the disability, and that he had the physical RFC for light and sedentary work, involving no more than occasional squatting, twisting, bending, and stooping (R. 79-80).

Plaintiff again requested that the Appeals Council review the ALJ's decision (R. 115). In support of his request for review, plaintiff argued, among other things, that ALJ Mondi failed to evaluate the evidence regarding plaintiff's back surgery because he relied on the RFC evaluation of the non-treating State Agency physicians that pre-dated the surgery (R. 118). On March 10, 2006, the Appeals Council vacated the hearing decision and remanded the case. The Appeals Council ordered that on remand, the ALJ provide documentation and explain his use of the "special technique" described in 20 C.F.R. § 404.1520a for evaluating plaintiff's mental functioning; reconsider plaintiff's RFC in light of the evidence in the record; obtain evidence from a vocational expert to clarify the effects of plaintiff's limitations; and reevaluate plaintiff's subjective complaints of pain in light of evidence the ALJ did not consider previously (R. 123-25).

On July 20, 2006, ALJ Mondi held another hearing, during which he heard testimony from plaintiff and from a vocational expert, Dr. Frank Mendrick (R. 645-68). Plaintiff testified that

between April 2003 and February 2004, he had pain in his legs and back, and he was able to sit or stand for 15 to 20 minutes, walk about five city blocks, and lift about ten pounds (R. 654-55). He could not bend over at the waist to touch the floor, and he could alternate between sitting and standing for about two to three hours (R. 655-56). Plaintiff also testified that he was "very depressed," and had "lots of problems with anger," which persisted even after treatment, with the condition growing worse from 2002 to 2004 (R. 663). Plaintiff testified that his mental condition led him to fight with his brother and to be rude to customers (R. 664). At the first hearing in October 2003, plaintiff had testified that he was only able to walk a block before needing to sit (R. 601-02), and that he could not sit for more than an hour (R. 602). He testified that he managed his pain by stretching, alternating positions, and taking medications such as Vicodin (R. 600-02).

The vocational expert, Dr. Mendrick, testified to the skill and exertional level required of plaintiff's past work. He testified that a mechanic performs skilled, heavy work; an emissions tester performs semi-skilled, light work; a gas station attendant performs semi-skilled, light work; a service administrator performs sedentary, semi-skilled work; and a warehouse supervisor generally performs semi-skilled, medium level work but plaintiff may have performed it at a light level (R. 657-58). ALJ Mondi posed some hypothetical questions to Dr. Mendrick, assuming a person of plaintiff's age, educational level, and physical RFC as assessed by the reviewing State Agency physicians in March 2002; that is, that the person could do light or sedentary work (R. 658-59). Dr. Mendrick opined that in those circumstances, the person could be an emissions tester and a gas station attendant who did not do stock work (R. 659). With the further limitation that the individual could only perform occasional squatting, twisting, bending, and stooping, as set out in the ALJ's earlier opinion, Dr. Mendrick stated that the emissions tester job would be excluded (*Id.*). With the further limitation

set out in plaintiff's testimony that he could only work three to four hours a day because of the need to rest and recline, only part-time, non-substantial, work would be possible (R. 660). Finally, when adding an inability to work closely with the public or supervisors due to a mental impairment, Dr. Mendrick stated that the hypothetical individual would not be able to perform work as a gas station attendant or an emissions tester (R. 666).

## V.

ALJ Mondi issued his opinion on October 13, 2006, concluding that plaintiff had not been under a disability at any time through the date of his decision (R. 18-19, 24). Although he found that plaintiff had a severe back impairment, the ALJ found that the medical and vocational evidence did not establish a period of at least 12 months when plaintiff was prevented from engaging in substantial gainful activity by reason of his back impairment (R. 21-22). In addition, although the ALJ found that plaintiff had a severe personality disorder, he concluded that the records did not establish symptoms or pursuit of treatment consistent with a disabling mental impairment that lasted a period of at least 12 months (*Id.*).

ALJ Mondi found plaintiff's testimony as to his pain and functional limitations not entirely credible when compared against objective evidence (R. 23). Rather, he accorded "controlling weight" to the report of reviewing State Agency physicians in March 2002, which found that plaintiff's impairments did not meet or equal any impairment in Appendix 1 and allowed light and sedentary work (*Id.*). Therefore, the ALJ determined that plaintiff's impairments did not, even in combination, meet or medically equal a disabling impairment that lasted a 12-month period (R. 22-23).

Moreover, the ALJ found that since the alleged onset of the disability, there has been no 12-month period when plaintiff was unable to perform his past relevant work as an emissions tester or as a gas station attendant not involving stocking (R. 24). The ALJ based his conclusion on the testimony of the vocational expert and on plaintiff's RFC as determined by the State Agency reviewing physician on March 27, 2002 (R. 23-24).

## VI.

After the Appeals Council denied review of the ALJ's decision on January 24, 2008 (R. 9), plaintiff filed this civil action pursuant to 42 U.S.C § 405(g), seeking judicial review of the decision denying him disability benefits for the period from November 13, 2000, through July 21, 2004 (doc. #1). Where the Appeals Council has denied review of the ALJ's decision, we review the ALJ's decision as the final decision of the Commissioner. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The Court performs a *de novo* review of the ALJ's conclusions of law, but the ALJ's factual determinations are entitled to considerable deference. *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006). We must accept the ALJ's findings of fact which are supported by "substantial evidence," 42 U.S.C. § 405(g), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). In reviewing the ALJ's decision, the Court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Although the Court's review is deferential, the ALJ's decision cannot stand if it contains errors of law, lacks evidentiary support, or lacks an adequate discussion of the issues. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ is not required to mention every piece of

evidence, but he must provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled, so that the reviewing court may determine whether the agency's ultimate findings are supported by substantial evidence. *Craft*, 539 F.3d at 673.

A claimant is entitled to DIB if found to be disabled within the meaning of the Social Security Act (the "Act"). 42 U.S.C. § 423(a)(1)(E). To establish a disability under the Act, a claimant has the burden of demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations define substantial gainful activity as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572.

The Social Security regulations prescribe a five-part sequential test for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. Under this test, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has medically determinable impairments that are severe alone or in combination; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations and whether the impairment meets the twelve-month duration requirement; (4) whether the claimant is unable to perform his past relevant work pursuant to an assessment of the claimant's RFC; and (5) whether, considering the claimant's RFC, age, education, and work experience, the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520; *Craft*, 539 F.3d at 673-74.

If the claimant was engaged in substantial gainful activity during the alleged period of

disability, or if the claimant did not suffer from a severe impairment, the claimant is not disabled.

*Craft*, 539 F.3d at 673-74.  Otherwise, the inquiry goes to Step Three; at that step, a claimant is

deemed disabled if his or her impairment meets or equals one of the listed impairments. *Id.* at 674.

If the impairment does not meet or equal a listed impairment, then the ALJ determines the claimant's

RFC.  At Step Four, if the claimant can engage in past relevant work, a claimant is found not

disabled. *Id.* If the claimant cannot engage in past relevant work, the inquiry proceeds to Step Five,

where the burden of proof shifts from the claimant to the Commissioner. *Id.* If the claimant can

engage in other work under Step Five, he or she is not disabled. *Id.*

Plaintiff challenges the ALJ's analysis at Steps Two, Three, and Four (Pl.'s Mot. at 2).  We

address these challenges in turn.

## A.

At Step Two, the ALJ found that during the closed period at issue, plaintiff suffered both

from a severe back impairment and from "personality disorders" (R. 21).  Plaintiff criticizes the Step

Two findings for two reasons. *First*, plaintiff argues that the ALJ erred by finding a personality

disorder under Listing 12.08 when none was asserted, instead of finding an affective disorder under

Listing 12.04 (Pl.'s Mem. at 8-9). *Second*, plaintiff criticizes the ALJ for failing, as part of Step

Two, to properly use a "special technique" set forth in 20 C.F.R. § 404.1520a to determine whether

plaintiff suffered from a mental impairment that caused functional limitations (*Id.* at 9-10).

Defendant agrees that the ALJ erred by considering plaintiff's mental impairment as a

personality disorder under Listing 12.08, as opposed to an affective disorder under Listing 12.04

(Def.'s Mem. at 10-11).  However, defendant argues that the ALJ nonetheless discussed plaintiff's

11

affective disorder (that is, his difficulties with depression and anger), and engaged in an analysis to determine whether those impairments caused functional limitations (*Id.* at 11).

Notwithstanding the ALJ's admitted error in ascribing to plaintiff a mental impairment under Listing 12.08 rather than 12.04 and the parties' quarrel about the quality of the ALJ's Step Two analysis concerning what functional limitations plaintiff suffered due to his mental impairment, it remains the case that at Step Two the ALJ found that plaintiff had severe impairments. As this Court recently commented, "we have found no case that has been remanded solely on the basis of a Step Two determination that was favorable to a claimant, but cursory." *Morgan v. Astrue*, No. 07 C 1741, 2009 WL 650364, at *8 (N.D. Ill. Mar. 9, 2009). In that opinion, we expressed our agreement with other courts in this district which have held that "as long as the ALJ proceeds beyond step two, no error could result from that analysis." *Id.* (quotations and citations omitted). Plaintiff has given us no reason to change course in this case. We find no reversible error here on the basis of the ALJ's Step Two determination.

**B.**

At Step Three, a claimant is considered presumptively disabled if he shows that he has an impairment that meets or equals all of the various criteria for an impairment found in the Listing of Impairments, or if his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). In making this determination, the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *Id.* "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Id.* at 670 (citing 20 C.F.R. § 404.1526(b)). An ALJ's failure to mention the specific

listings he is considering, combined with a "perfunctory analysis," may require a remand. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The ALJ's analysis of plaintiff's mental impairment at Step Three suffers from both deficiencies. In the portion of his opinion devoted to Step Three, the ALJ makes no mention whatsoever of plaintiff's mental impairment (R. 22-23). Giving the ALJ the benefit of the doubt, and treating his Step Two discussion of plaintiff's mental impairment as a Step Three analysis, does not cure the problems.

To begin with, the ALJ admittedly analyzed plaintiff's mental impairment under the wrong listing: he cited Listing 12.08 for personality disorders, instead of Listing 12.04 for affective disorders such as depression. Defendant argues that this error is of no moment because the ALJ did refer to evidence of plaintiff's depression and anger, and because the "B" criteria are the same in Listings 12.04 and 12.08 (Def.'s Mem. at 11). Under the "B" criteria, the ALJ found that plaintiff's "personality disorders" produced mild limitations on his daily living, moderate limitations on his social life, and mild limitations on his ability to maintain concentration (R. 22). However, the ALJ's discussion of the "B" criteria does not adequately link his conclusions to the evidence. For example, the ALJ cited evidence of plaintiff's "intense and unstable interpersonal relationships and impulsive and damaging behavior" (R. 21), as well as "arguments and fights with his brother, being rude to customers at work, . . . having been given the choice of resigning or be fired on two jobs" after tantrums or other outbursts of anger, and "a problem with an employee at Advance Auto and confrontations with customers" (R. 22). In the face of that evidence, the ALJ's unexplained conclusion that plaintiff did not meet the standards set by Listing 12.08B (or 12.04B) failed to "build

an accurate and logical bridge between the evidence and result." *Ribaudo*, 458 F.3d at 584 (internal citation and quotation marks omitted).

In short, the ALJ's perfunctory analysis, conducted under the wrong listing, does not adequately answer the Step Three question. *See Ribaudo*, 458 F.3d at 583 (ordering remand where the ALJ both failed to mention the applicable listing and failed to evaluate evidence favorable to the plaintiff that was relevant to the listing). We therefore remand the case for further consideration at Step Three.[3]

## C.

At Step Four, the ALJ determined that plaintiff was able to perform his past relevant work as an emissions tester and a gas station attendant, so long as the gas station attendant job did not involve stocking goods (R. 24). Plaintiff argues that this finding was in error, because it was based on an RFC that failed to incorporate all of plaintiff's physical and mental limitations supported by the evidence (Pl.'s Mem. 12-13). We agree.

Past relevant work is generally work performed by the plaintiff in the fifteen years prior to the onset of disability, as the plaintiff performed it or as it is usually performed in the economy. 20 C.F.R. § 404.1565(a). The plaintiff must have held the job long enough to learn how to perform the work and for the work to be substantial gainful activity. *Id.* The burden is on the claimant to prove the he is unable to return to his past relevant work as he performed it or as it is performed in the national economy. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). The ALJ must make factual

---

[3]The ALJ also failed to cite the relevant listing for plaintiff's severe back impairment, Listing 1.04 (disorders of the spine). However, at Step Three, the ALJ did analyze both plaintiff's testimony concerning his limitations and the medical evidence concerning that impairment, including the assessment of State Agency physicians (R. 22-23). Given that we do not find his analysis at Step Three of plaintiff's back impairment to be perfunctory, we do not order a remand on that basis. Of course, on remand, the ALJ is free to revisit that aspect of the Step Three analysis if he so chooses.

findings that support his conclusion as to the duties involved in the prior job and the claimant's ability to perform those specific tasks. *Id.* at 480-81. If the claimant has the RFC to perform past relevant work, then he is not disabled.

A plaintiff's RFC represents the maximum work activity that a plaintiff can perform despite his mental and physical limitations. *Craft*, 539 F.3d at 675-76 (citing 20 C.F.R. § 404.1545(a)(1)). When determining the RFC, the ALJ must consider all medically determinable physical and mental impairments, even those that are not considered severe, by looking at the medical evidence and other evidence in the record, such as testimony by the claimant. *Id.* (citing 20 C.F.R. § 404.1545(a)(2), (b), (c)). Mental impairments include those that may cause "limitations in responding appropriately to supervision, coworkers, and work pressures in a work setting." *Id.* (citing 20 C.F.R. § 404.1545(c)). This may reduce a claimant's ability to do past work. *Id.*

In his analysis of plaintiff's RFC, the ALJ focused solely on limitations resulting from plaintiff's back impairment (R. 23-24). In so doing, he gave controlling weight to the March 2002 State Agency examiners' RFC determination (R. 23), which itself focused exclusively on plaintiff's physical impairments and did not discuss at all his mental impairments. The ALJ noted plaintiff's problems with depression and anger, and in particular, that he had a history of conflict with customers and had lost two jobs as a result of outbursts of anger (R. 21-22). But, the ALJ failed to analyze how that might have affected his RFC. Nor did the ALJ discuss plaintiff's GAF score of 55-60, which under the DSM was further evidence of a serious mental impairment that would affect plaintiff's ability to keep a job. In light of the documented evidence of a severe impairment in plaintiff's mental functioning that could affect his ability to hold a job, we also wonder why there was never a State Agency examination done for the purposes of developing a mental RFC.

The ALJ's failure to consider the effect (if any) of plaintiff's mental impairment on his RFC was of significance here. At Step Two, the ALJ found plaintiff's mental impairment to be severe. The vocational expert testified that a person unable to work closely with the public or supervisors would be unable to perform work as a gas station attendant or an emissions tester – the prior work that the ALJ found plaintiff could perform – because those jobs "all deal with the public and require interaction on the basis of cooperation" (R. 666). The ALJ's failure to consider this important aspect of plaintiff's impairments requires remand for further consideration of plaintiff's RFC.[4]

## CONCLUSION

For the foregoing reasons, we deny the Commissioner's motion for summary judgment (doc. #23), and we grant plaintiff's motion for summary judgment (doc. # 19). We remand the case for further proceedings pursuant to Sentence 4, 42 U.S.C. § 405(g). This case is terminated.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: March 26, 2009

---

[4]As a result of this ruling, we do not pass on plaintiff's argument that the ALJ failed to give due consideration to the evidence of plaintiff's pain when developing the RFC (Pl.'s Mem. at 13). The ALJ found that "claimant's testimony of pain and functional limitations, when compared against the objective evidence and evaluated using the factors in SSR 96-7p, [was] not entirely credible" (R. 23). The ALJ specifically referenced the assessment by Dr. Andreshak on July 21, 2004 – the last day of plaintiff's disability (R. 23). However, the ALJ failed to address evidence consistent with plaintiff's expressions of pain, including the January 31, 2001 report showing chronic L5/L5-S1 radiculopathy (R. 341), the use of epidural injections to diminish back pain at various times between 2001 and 2003 (R. 360, 445-48), and the back surgery in February 2004 (R. 487-89). While an ALJ is given great latitude in making credibility determinations, *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008), an ALJ may not simply select the evidence that supports a particular conclusion and ignore evidence to the contrary. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). Thus, on remand, we invite the ALJ to further explore the issue of plaintiff's pain when considering the appropriate RFC.